UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> EVER O. LEMUS-HERNANDEZ ) <br> ) | Criminal No.: 06-327 (TFH) <br> (FILE UNDER SEAL) |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Ever O. Lemus-Hernandez, through undersigned counsel, respectfully submits his Memorandum in Aid of Sentencing.

**Procedural History**

Defendant Ever Lemus-Hernandez will appear before the Court on Friday, April 20, 2007 for his Sentencing Hearing. On December 12, 2006, Mr. Lemus-Hernandez entered a guilty plea to a Criminal Information that charged him with Conspiracy to Distribute and Possess With Intent to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(ii). The information charged that Mr. Lemus-Hernandez and others participated in a conspiracy from January 2006 to September 2006.

Pursuant to the conviction Mr. Lemus-Hernandez faces a mandatory minimum sentence of ten years of incarceration and a maximum term of life imprisonment. Mr. Lemus-Hernandez is subject to a fine of four million dollars and a term of supervised release of at least five years. Probation Officer Renee Moses-Gregory in her Pre-Sentence Investigation Report (the "PSR") has identified a sentencing guideline range of 70 to 87 months pursuant to the advisory United States

Sentencing Guidelines. The range is based on a final Base Offense Level 27 and a Criminal History Category I. Mr. Lemus-Hernandez is not subject to the mandatory minimum sentence of ten years of incarceration because he is eligible for a departure pursuant to the "safety valve" provision. See PSR ¶ 15, 51

**Factual Background**

Mr. Lemus-Hernandez's criminal conduct consisted of arranging a meeting with a special employee of the Metropolitan police department for the purposes of selling five kilograms of cocaine. Mr. Lemus-Hernandez fixed the cost of the cocaine at $21,000.00 dollars per kilogram. On September 7, 2006, Mr. Lemus-Hernandez along with co-defendant Jose Sintuj-Flores met the special employee in the area of the 300 Block of Riggs Road, NE. Mr. Lemus-Hernandez and Mr. Sintju-Flores were arrested after exchanging the cocaine for the money provided by the special employee. Additional investigation revealed that the supplier of the cocaine, Cesar A. Morales, had traveled from Indiana to Mr. Lemus-Hernandez's house in Maryland with the cocaine that was sold to the special employee. Mr. Morales was later arrested and the authorities recovered three kilograms of cocaine in his truck.

**ARGUMENT IN SUPPORT FOR A SENTENCE OF TIME SERVED**

Mr. Lemus-Hernandez is before the Court facing his first criminal conviction. Prior to the instant offense Mr. Lemus-Hernandez had never been involved in any criminal activity in his native country of Guatemala, or in the United States. There is no rational explanation why he would involve himself in such a serious crime. When he decided to sell cocaine, Mr. Lemus-Hernandez had a good paying job earning $15.00 dollars an hour as a painter. Furthermore, the job was permanent and offered long term financial stability for him and his wife. When he was arrested, Mr.

Lemus-Hernandez's wife was days away from delivering their first child. Accordingly, his decision to sell cocaine has had devastating effects for him, his wife and their infant child.

In his brief interaction with the criminal justice system Mr. Lemus-Hernandez has been through an unimaginable experience. Prior to his arrest, Mr. Lemus-Hernandez had never seen the inside of a jail. The experience has by all means been sobering. Suddenly, he found himself wearing an orange jumper and housed with some of the District's most violent individuals. For the first time in his life Mr. Lemus-Hernandez's daily movements regarding when he slept, woke, ate and saw family were ordered, monitored and regimented.

While in prison, Mr. Lemus-Hernandez's main concern has been his wife, who has been alone, and without any emotional and financial support. Although he has been unable to financially provide for his wife and infant child, he is determined to do so when he is released from custody. At this point, Mr. Lemus-Hernandez is looking toward a future when he is out of prison and able to care for his wife and child.

Mr. Lemus-Hernandez rues the moment that he agreed to be a distributor for Cesar Morales's cocaine. There is no denying that Mr. Lemus-Hernandez has brought about his own predicament. However, his experience at the jail, his separation from his wife in her moment of need and his history of good conduct make it extremely unlikely that he will re-engage in future criminal conduct. Based on these factors Mr. Lemus-Hernandez requests a sentence of time served. The request is supported by the applicable sentencing statutes and the consideration for substantial assistance to the government.[1]

---

[1] Undersigned counsel, anticipates that the government will file a motion pursuant to 18 U.S.S. § 3553(e) and U.S.S.G. § 5K1.1 based on Mr. Lemus-Hernandez's substantial assistance.

3

A.  **PURSUANT TO UNITED STATES v. BOOKER , 18 U.S.C. § 3553(a) & (e), 18 U.S.C. § 3582, AND 28 U.S.C. § 991(b)(1)(B) THE COURT HAS AUTHORITY TO SENTENCE MR. LEMUS-HERNANDEZ TO TIME SERVED**

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory sentencing guidelines as they were applied were unconstitutional. The Court further held that judges are required to "take account of the Guidelines together with other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added). But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court.

Those factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the needed educational or vocational training, and pertinent policy statements issued by the sentencing commission, the need to avoid unwarranted sentencing disparities among similarly situated defendants. U.S. v. Clifton Price 409 F.3d 436, 442 (D.C. Cir. 2005) Moreover, Sentencing Courts have a continuing duty to "[w]eigh the purposes of sentencing listed in the Sentencing Reform Act." U.S. v. Jabber 362 F.Supp.2d 365, 369 (D. Mass. 2005).

Application of the advisory sentencing guidelines provides the court with flexibility in determining the appropriate sentence for Mr. Lemus-Hernandez. Under the advisory sentencing regime the Court can take into account the particularized factors of Mr. Lemus-Hernandez's life and not just the fact of his criminal conduct. This approach is consistent with the goals of 28 U.S.C § 991, the enabling statute of the Sentencing Commission, and 18 U.S.C. § 3553(a). The enabling statute and the sentencing statue contemplate a flexible and particularized approach to sentencing determinations that were vitiated under the pre-Booker mandatory sentencing guideline regime. 28

U.S.C. § 991(b)(1)(B) supports a sentence that is not determined, solely, by a rigid mechanistic formula that ignores the statutory factors set forth in 18 U.S.C. § 3553(a).

Congress created the Sentencing Commission with the laudable goal of providing a method and structure for Courts to achieve uniformity and fairness in sentencing. However, the enabling statute did not lose sight nor preclude the notion of individualized sentencing. 28 U.S.C. § 991(b)(1)(B) promotes the idea of a sentence that is not solely determined by a rigid formula in allowing Courts to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices."

18 U.S.C. § 3553(a)(1) directs the Court to look at Mr. Lemus-Hernandez' history and nature and circumstance of the offense. The nature of the offense, 21 U.S.C. 841(a)(1), and Mr. Lemus-Hernandez's involvement suggests a limited conspiracy to distribute powder cocaine. The investigation supports the fact that Mr. Lemus-Hernandez had agreed to be the local distributor in the conspiracy. The investigation revealed that Cesar Morales was the person who had access to substantial amounts of powder cocaine. There is no evidence that prior to Mr. Morales' journey to Washington, D.C. to deliver the cocaine, Mr. Lemus-Hernandez had trafficked in large amounts of powder cocaine, or any other drug for that matter. His limited role is further supported by the fact that he had nothing of value when he was arrested. Mr. Lemus-Hernandez neither owned nor possessed an expensive car, jewelry or any home furnishings worth mentioning.

When Mr. Lemus-Hernandez immigrated to the United States, he came with the same dreams and aspirations that immigrants have traditionally brought to this country. For eight years he made that dream a reality through gainful employment and with his relationship with his common law

wife. Regrettably, he turned his dream into a nightmare when he inexplicably decided to work with Cesar Morales. When he was arrested, Mr. Lemus-Hernandez had a lawful and very good paying job that would have provided for his small family. For approximately five years before his arrest, he worked with NLP Enterprise. His work was valued enough that the company indicated that it would consider rehiring him. Clearly, Mr. Lemus-Hernandez did not appreciate the depth of his decision to associate himself with Cesar Morales.

Pursuant to 18 U.S.C. § 3553(a)(1)(2)(A) Mr. Lemus-Hernandez' sentence must reflect the seriousness of the offense. Because Mr. Lemus-Hernandez committed a serious violation, the Court has to address his conduct. As it stands now Mr. Lemus-Hernandez is facing a mandatory term of ten years of incarceration and five years of supervised release. However, the seriousness of the offense has to take into account and result in a sentence that "promote[s] respect for the Law and provide[s] just punishment."

Since he is now a convicted felon, Mr. Lemus-Hernandez knows that he will be deported from the United States after completing his term of incarceration. He knows that he will not be returning to his well paying job and that his separation from his wife and infant son will continue. Moreover, upon his return to Guatemala he will have to find subsistence labor. Sadly, Mr. Lemus-Hernandez will be returning to Guatemala when many of his countrymen are continuing to leave for the United States in search of work and a better future. Unfortunately, his punishment is not limited to his imprisonment. In short his short sighted decision to sell cocaine will continue to have drastic consequences for his future and the future of his family.

It is the latter consequence of his conduct that deeply troubles Mr. Lemus-Hernandez. He also acknowledges that there is very little that he can show for his illegal conduct. Having had eight

months to reflect on his legal predicament Mr. Lemus-Hernandez wants to return to the lawful life he led in the United States for eight years. His involvement in illegal activity which resulted in his incarceration is an aberration that he wants to never repeat and experience again.

A sentence of time served, that will be followed by mandatory deportation, can be "just punishment" when the Court considers and takes into account 18 U.S.C.§3582. In pertinent part 18 U.S.C. § 3582 (a) states:

> "The Court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) **to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation**" (emphasis added)

**B.    MR. LEMUS-HERNANDEZ IS DESERVING OF A SENTENCE OF TIME SERVED BASED ON HIS SUBSTANTIAL ASSISTANCE TO THE GOVERNMENT**

Mr. Lemus-Hernandez's cooperation began within minutes of his arrest when he was processed and interviewed by the case agents. The arresting agents asked Mr. Lemus-Hernandez if he was interesting in speaking to them without the presence of an attorney regarding his criminal conduct and his sale of cocaine to the special employee. Mr. Lemus-Hernandez agreed without reservation to be interviewed by the arresting agents. From that point on Mr. Lemus-Hernandez began to affirmatively assist the authorities in the investigation of his own criminal conduct and the criminal activity that he had arranged with Cesar Morales and co-defendant Jose Sintuj-Flores.

Mr. Lemus-Hernandez' cooperation began with two substantial proffer sessions that took place at the invitation of the government. The investigation of Mr. Lemus-Hernandez's participation in the conspiracy showed that his role was limited and dependent on Cesar Morales. During the proffer sessions Mr. Lemus-Hernandez informed the government how he was introduced into the

drug trade, who was his first supplier and buyer. He then informed how an acquaintance from New Jersey, who is also Guatemalan, connected him to Cesar Morales who lived in Indiana. Mr. Lemus-Hernandez met Cesar Morales for the first time when the latter drove from Indiana with the five kilograms of powder cocaine. Within hours of meeting Mr. Cesar Morales and obtaining the cocaine to sell to the special employee, Mr. Lemus-Hernandez was under arrest.

In evaluating a defendant's cooperation, the Court is to consider five factors: (1) the significance and usefulness of the assistance; (2) the truthfulness, completeness, and reliability of any information provided; (3) the nature and extent of the assistance; (4) any danger or risk of injury resulting from the assistance; (5) the timeliness of the assistance. Particularly in view of the first, second, and fourth factors, Mr. Lemus-Hernandez is deserving of a substantial reduction from the applicable guideline sentencing range.

The requested sentence of time served is extraordinary in view of the fact that Mr. Lemus-Hernandez will have served a total of eight months of incarceration when he appears before the Court. However, on account of his immigration status and offense of conviction Mr. Lemus-Hernandez faces mandatory deportation. 18 U.S.C. § 3582 recognizes that the paramount goal of rehabilitation is not necessarily promoted by long term incarceration. By applying the relevant factors of 18 U.S.C. § 3553 (a) and (e), § 3582, and 28 U.S.C. § 991(b)(1)(B) the Court can justify the imposition of a sentence of time served.

**CONCLUSION**

Mr. Lemus-Hernandez led a productive and lawful life throughout the eight years that he has lived in the United States. Since he arrived in the United States, Mr. Lemus-Hernandez aspired to realize the American dream of improving himself through hard work, honesty, and family

responsibility. Mr. Lemus-Hernandez is a decent and humble man who made a terrible decision. That decision has cost him dearly. Mr. Lemus-Hernandez now has a felony conviction which will result in his deportation. Mr. Lemus-Hernandez is committed to beginning his life anew and being the responsible family and working man that he was before he got involved in the charged offense. By all indications Mr. Lemus-Hernandez has learned a bitter lesson that will stay with him for the rest of his life. For the foregoing reasons undersigned counsel respectfully requests the Court to impose the requested sentence of time served.

> Respectfully submitted,
> A.J. Kramer
> Federal Public Defender
>
> _____/s/_____
> Carlos J. Vanegas
> Assistant Federal Public Defender
> 625 Indiana Ave., N.W., Suite 550
> Washington, D.C. 20004
> (202) 208-7500

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendant's Memorandum In Aid Of Sentencing will be served by electronic mail to martin.carpenter2@usdoj.gov and by delivery to the mail box of the United States Attorney in the Federal District Courthouse on this the day of April 18, 2007 to Martin D. Carpenter, Esq. Office of the United States Attorney for the District of Columbia 555 Fourth Street, N.W. Washington, D.C. 20001

_____/s/_____
Carlos J. Vanegas